been submitted on the brief, so this will be our last argument of the day. Good morning, Your Honor. May it please the Court, Michael Cotner on behalf of Petitioner Estela Rodriguez-Quinranza, and I would reserve five minutes for rebuttal, please. Your Honor, as we are well aware, the expedited removal procedures under 8 U.S.C. 1225 is one whereby an immigration officer at the border makes a snap decision on an alien's admissibility, thereafter subsequently enters an order removing that alien, based on the immigration officer's review of the evidence at a quick time. As a point of reference in this process, the alien is placed generally in an interview room with several immigration officers without any type of representation. The immigration officer then proceeds to rattle through a predetermined set of specific questions that, based on the record, is obviously fashioned on enlisting a certain response, which would be in support of a type of removal order. After the process, the alien is not informed of the right to appeal and whether it is necessary to protect their interests, and simply moved on and out of the country. Now, initially, Your Honors, we would submit that the District Court improperly denied for failure to exhaust administrative remedies for purported failure to assert she was a in this case is that we would be afforded a hearing. We're not asserting that if this hearing were to take place, that we would win. The reason... Counsel, are there independent grounds here? She came in with a false Social Security card or birth certificate? The evidence would suggest that it was a false claim to United States citizenship, and that's what we're arguing, Your Honor. And if that was false, that would be an independent reason for barring her, even if she was a lawful temporary resident. Yes, Your Honor. However, I would argue that when there's an issue of whether she still had temporary residence or whether her permanent residence had been... Was there an issue? Excuse me? Did she raise that on that first go-around? No, Your Honor, and that's what I... Where's the issue? Well, the issue is in the fact that if we're looking at it pragmatically at the situation where she's placed in this room with this immigration officer, yes, she may... We told them that she doesn't have any type of legal residence, that she doesn't have any type of documents to be here, but it ignores the situation of she could have been coerced in this type of situation, and that's what we're situating. When there's an issue of whether she had residence, we would argue that she has some type of review to revisit this issue. The fact that this was done... But doesn't that have to be brought up? In other words, the immigration officials are in the interview room or phone booth or wherever they take them and say, why are you here? And the person says, here's my false ID and I have no right to be here. So where is... Did the immigration service go wrong? That's the problem, Your Honor. I think that that's when we're looking at the equity in the situation. She was... Is it equitable, however? In other words... No, I would argue it's not because right now... to be in the United States, which she did not raise at that time. And then she was summarily ejected from the United States, reenters, is summarily ejected again, now wants to challenge the original removal. And I understand that, Your Honor. So aren't there some major administrative hurdles? Yes, Your Honor, there are administrative hurdles, but I would like to focus the court's attention on the evidence that the court is relying on is simply what the immigration officer has stated. And when there is a question as to a person's residence, whether she asserted or not, she is entitled to the protections in the immigration court. Does she deny that she came in the first time with a false claim of citizenship? The issue hasn't even... We weren't even allowed to visit the issue, Your Honor. I can assure you that... Well, someplace you put together some kind of a pleading, didn't you? No, Your Honor, that's absolutely... No, that's what we're arguing. We were... By being in this expedited removal procedure, we were stripped of that ability to revisit it. No, I'm talking about now. Well, Your Honor... You put together some kind of a pleading to bring this case, right? Yes, Your Honor, but I would submit to the court, once we get to the appeal process... Is there a denial in your... Is there a denial in your pleading that she committed a crime by making a false statement to the immigration service? There's nothing in the record thus far, Your Honor. There's nothing in the record. So can we assume, therefore, that she committed a crime when she made this false statement? I would say that we can't, Your Honor. I would say that we can't assume that she made this because we're... If we're looking at... Simply, this is what the immigration officer said that she said. Whose business is it to bring it up? Whether... You're saying no. The only evidence we have is that she did. Well, I think that we're placing an extremely heavy burden on an alien who is sitting in an immigration interview without counsel to understand that if she does not raise this issue... And I would like to point the court's attention... Oh, no. Back up. At the time she crossed the border, she said, I have a document here which says I'm a United States citizen. I want in. Okay? Is there anybody around her at that point at any time... Was there anyone around her saying, you have to do this? No, Your Honor. And I would... She was not being forced to. No, Your Honor. If I could direct Your Honor's attention to the supplemental record at page 49, about halfway through, where... This is what has been explained to her about halfway through. I'm starting three paragraphs down. This may be your only opportunity to present information to me and serves to make a decision. And the next sentence says, you may be subject to criminal or civil penalties even if you give misinformation. So I think that she's entitled to the reasonable doubt. If she didn't know truly what her status was, she would err on the side of caution. There's two things going on here. I'd understood that much of your argument was, she had a right to be in the United States, which she failed to disclose. That's a problem in the United States. We should let her back in anyway because she had a right to come into the country. That's only part of the problem. The problem is, is that she tried to come in with false identification. Your Honor, again, I would submit that I don't think that that has been definitively proved. Judge Duffy's question was, you've had an opportunity to this point, at some point to say, we would like a hearing because she disputes that she showed false ID at the border. If she didn't show false ID and she's a lawful temporary resident, then she had a right to come in and we want a hearing in order to be able to prove that. But we haven't even got... Judge Duffy's question, too, I think was, we haven't even got anything at this point that says she didn't, she denies that she lied to the border agents. Your Honor, that's, I think, like I said, I think... We're at least going to start with the proposition that's true, right? We can start with that assumption. It should be an assumption. We ought to be able to, either you have or you haven't. Yes, Your Honor. But my point is, in this respect, is that when there is a question asked, and I'm looking, underlining the question which Judge Duffy asked, when there's a question asked to residents, if there's any indication, it's indisputed that she was a temporary resident at one time or another. She is not, that she should have gotten some kind of protection in the immigration court. And when we get to the immigration court, when we get that hearing, then we can revisit those issues. Your Honor, I can... How did they know she was a lawful temporary resident? Is it a halo? Your Honor... That carries around with her? Your Honor, they had my client's fingerprints. They had her fingerprints. They had a system where they could have brought it up. You've got her right in front of her. I understand that. She didn't say a word about it, apparently. Well, Your Honor... She hasn't said she ever said a word about it. So doesn't she have an obligation to stand up and say, look, I'm a lawful temporary resident. You've got to treat me as such. I think it's fair to assume, Your Honor, to go under the suggestion that she didn't know exactly what her status was. If we look at the record, it is undisputed that she was granted temporary resident. It is further undisputed that it was not revoked. It is further undisputed that she submitted an application for lawful residence. Now, when looking at the... She didn't know any of that when she was talking to the immigration officer? Your Honor, this was a situation that had happened over a 10-year period when we're looking at this time. So I would submit that it's reasonable that she didn't know what was going on. And I think that if we look at what she was explaining to her in this kind of atmosphere, where we know what happens when you're interrogated by... You're intimidated. There's no doubt about it. There isn't a citizen out there that, when they're speaking to an official, unless they're really versed in the law, that they're intimidated. And based on that, Your Honor, this statement says, if you give misinformation, you will be subject to criminal proceedings. I think that if she didn't know truly exactly what was going on, it's reasonable to assume that she would have possibly been fear of criminal proceedings. So did she believe that what she gave them was accurate? In terms of... The documentation that she gave them? Well, Your Honor, if she did give that documentation... Let's assume for the fact that she did give this documentation. Even if she had expedited... Even if she had resident status, and we have argued in the brief that temporary residence and lawful residence should be treated the same. Regardless, she should be granted the hearing. Even if she gave the false... How do they know that they need to give her a hearing? They have this person in front of them who's tried to enter on what they think is false ID. According to what we think we know, admitted that she had no right to be in the United States, and so she's excluded. So at what point does somebody say, look, you've got a right to a hearing? I think that the government is clearly in a position to search their files and see that Ms. Carranza would have had temporary residence at one time. I don't think that's too much of a burden, Your Honor. Is it too much of a burden to ask the person face-to-face? And my answer to that, Your Honor, is I don't think she truly knew what her status was. I really do not. And I think considering the fact that she could have been subject to criminal penalties, she was told this directly right to her face, that she wanted to err on the side of caution. I think that's just as reasonable to assume that she didn't have it. Because she knew she was subject to criminal penalties for what she had already done. And I understand that, Your Honor. I understand that, Your Honor. But that doesn't take away from the fact that if she had some type of residence status, she was entitled to a hearing. She was not subject to these expedited removal procedures. Was she entitled to a hearing the second time around?  The case that the plaintiff raised with Padilla v. Ashcroft, this Court has distinguished that case in Perez-Gonzalez v. Ashcroft, which states that if technically before the second time you reapply, you are applying for something that would have cured that prior deficiency, that the reinstatement does not bar attack of the prior case. Now, in this case, she sneaked in after the first time, after she was deported. Is that correct? After she was excluded, if you'll have it that way. Yes, Your Honor. And she came in not by saying, I'm a lawful temporary resident. She came in saying, I'm somebody else. Well, Your Honor, if I may be granted some leeway, in Perez v. Gonzalez, this Court had a similar situation where an alien was excluded ten years before, came back, just like Your Honor is stating, was applying for adjustment of status and was applying for an immigration waiver, went to the actual interview and was shot back out. The Court distinguished Padilla, the case that the respondent relies on, and stated because he was technically applying for a discretionary waiver prior to the reinstatement of the prior deporter, that reinstatement does not bar attack of the prior removal. Now, I think we have the same case here. When my client was caught again, she was presenting herself to what they termed for a replacement temporary resident card. If she had had her temporary resident card, this prior deportation would be considered invalid because they can't subject people when there's any kind of question to lawful status. So that, Your Honor, I would say no. I would say we do have a right to attack this order, even considering the reinstatement. By the way, you mentioned ten years before. Is there a statute of limitations any place? Not that I am aware of, Your Honor. Not that you know of. Not that I know of, Your Honor. That's a question I'll ask the other side. I'm sure you are. And I would like to revisit for a minute the issue of whether temporary residents and lawful permanent residents should be treated the same. Assuming that petitioner's temporary residence was never revoked, she should be entitled to the same treatment as LPRs who were never subject to expedited removal pursuant to 8.1225.b.2. In Aguilera v. Medina, this court suggested the most straightforward interpretation of an immigration law in respect to a situation differentiating between an LPR and a temporary resident is that they should be treated equally. Now, although this was technically in the SAW context, the other amnesty provision created by the Immigration Reform and Control Act of 1986, it does not take away from the fact these two provisions were brought into existence together. This is important because it lends credence to the fact that the logic from the SAW context should be applied to temporary residents who became such by simply being here prior to 1982. As a general rule, the BIA, who is the primary agency for interpreting immigration law, has always treated congressional silence with great deference. What is more, the United States Supreme Court in INS v. St. Cyr has equitably held that the equitable course is to apply INA provisions narrowly. This is relevant because Congress has clearly spoken of when LPRs and temporary residents are to be treated differently in the expedited removal context. 8 U.S.C. 1228b1 and b2 authorized the Attorney General to order expedited removal when the alien has been convicted of an aggravated felony, even when the alien is a temporary resident, which is obviously different from a lawful permanent resident who would never be subject to expedited removal, even if they had been convicted of an aggravated felony. In the expedited removal statutory context, there is no further differentiation by Congress for disparate treatment among temporary residents and lawful residents. As stated in the opening brief, the United States Supreme Court has again held that when Congress includes language in one section of a statute but omits it in another section, it is presumed to be intentional. And that is from Rosella v. United States. Therefore, in the absence of further language of differentiating treatment between lawful residents and temporary residents, it would be unfairly prejudicial to amend the statute and require different treatment, whereby temporary residents, subject to the expedited removal over lawful permanent residents, in any context other than when there is an aggravated felony conviction. And with that, Your Honor, I would reserve time for rebuttal. Thank you. Good morning. May it please the Court. My name is Melanie Schender and I represent the government in this matter. Your Honor, this is a seemingly complex set of issues before the Court, but taken each issue individually, each issue has a very simple answer. The first issue, which I notice the Court does not have any questions about, so I'll submit that issue on the brief, what constitutes the record on appeal? Going to the issue of the District Court's decision in this case, the District Court should be affirmed because there is extremely limited habeas review. That was not changed under the REAL-ID Act, and the issues remain confined to the issue of whether Rodriguez-Ferranza is an alien, which she has admitted, whether she was ordered removed under the expedited removal provisions, which she has admitted, and whether she is an LPR or a lawful permanent resident, a refugee, or an asylee. She is creating this fiction that as a temporary resident, she is entitled to the same treatment as a lawful permanent resident. That simply is not true. Congress clearly addressed this matter when it enacted the SAW provisions. The SAW provisions provide, the special agriculture worker provisions provide, that those aliens were to be treated as permanent residents for purposes of coming and going. And the reason for this is because that provision was for aliens who were migratory workers. They needed to come and go. That was the nature of why they were allowed to gain some form of lawful status in the United States. Ms. Rodriguez-Ferranza gained her temporary residence under 1255A. That section has numerous differences from the SAW provisions. In that section, her ability to travel was highly limited. In fact, to be admitted to the United States after departure, there are a number of conditions she had to reach, six in fact, and she did not qualify for three of those. She had been absent for more than 30 days. She had been absent for an aggregate period of more than 90 days. She admitted she had been gone for four months. She didn't have her lawful temporary residence card. And here I would submit that the court has had questions about her state of mind. Did she know she was a temporary resident? Could she honestly answer that question? Certainly she could, although it's not the record on the appeal. The record ordered to be submitted from the commissioner for the DHS alien file reveals that simply 14 days after she was ordered removed under the expedited removal proceedings on page 47 of the proxy administrative record, it reveals that she submitted an application for replacement temporary resident card. She was aware that she had temporary resident status, and she chose to lie about that. The questions of which opposing counsel has raised questions are direct questions. Do you have a right to reside in the United States? Where were you living? They aren't questions designed to intimidate. They're simple questions designed to elicit truthful answers. And certainly had they not cautioned somebody of the possibility of criminal prosecution for lying under oath, that would raise questions if there were a criminal prosecution that would rose from that. It's simply analogous to a Miranda warning. So it's not any intent to intimidate. It's an advisory of her rights and responsibilities. Going back to the issue of the differences between 1255A temporary residence and SAW temporary residence. SAW temporary residence adjusts to permanent residency in an automatic procedure. After a certain period of time, they receive a green card. 1255A temporary residence must go through affirmative steps to adjust. They have to submit an application. They have to report for an interview. And they have to establish that they've resided in the United States. Did she make all the required steps? No, Your Honor. She did not. She failed to respond to two interview requests. And, in fact, Your Honor, that has placed her in essentially a limbo. There's been a question of what is her status. She is, in fact, in this sort of limbo status of having this lawful temporary resident status. However, she's not entitled to reenter because she had been gone for four months after she applied. There's a regulation, and I could certainly brief this issue in more depth if the Court were interested in it, but at CFR 245A.3, subsection H, it states that a lawful temporary resident who submitted her application for permanent residency who departs the United States for more than 30 days or more than an aggregate of 90 days is not entitled to reentry. So she would not be entitled to any form of relief from that because she chose to depart the United States for four months. The purpose of this statute was amnesty. I think we are all familiar with it. What is the section that you were giving? 8 CFR 245A.3, subsection H. So she did not finish the process, and at this point, the agency is aware of its error in not following through. She failed to appear for her second interview and terminating her temporary resident status, and I've advised them to wait until the Court's decision in this case to take any action. The other issues involved are the reinstatement bar that was raised. It was brought to my attention in preparation for this case that the Real ID Act enacted that provision 1252A2D, which says that other than this statute issue, this habeas petition review statute, nothing bars for judicial review of legal questions raised upon a petition for review or constitutional issues raised upon a petition for review. That does not affect this petition in any way because her questions are beyond the scope of review allowed in 1252E, subsection E. And to that, I would also submit, Your Honors, that this is not an issue of constitutional due process as framed in Petitioner's Brief. It's simply a statutory question, statutory interpretation question, that's been cloaked in claims of due process violations. And to opposing counsel's point that all they are asking for is a hearing in front of the Immigration Court, such a hearing would be futile. There's no relief available to her. She admits that she's married to a Mexican national, so she would not be able to qualify for some kind of waiver or even the traditional adjustment of status application based on a petition for a visa on her behalf. And her time, her absence, that absence cuts off any accrual of time, so she would not qualify for cancellation of removal for non-permanent residents. Is there a statute of limitations on attacking a decision by the INS, whatever it's called now? Your Honor, there is no statute of limitations on habeas review. So for that, there was no issue of time. Prudentially, one might wonder why she didn't raise these issues in the last seven years at least, but there's no habeas for Immigration Court or immigration purposes does not have a statute of limitations. Okay, so if they could sit on their rights for 40 years, come back and attack the INS decision. That certainly seems to be what Congress provided in these cases. There's no statute of limitations. Is there some inhibition? Isn't there a general statute of limitations someplace in 28 U.S.C. as to civil actions? Your Honor, I think there must be, but I do not know that that applies to these sorts of actions. I don't know it either. That's why I'm asking you. I would be happy to submit a brief on that issue if that's an issue of concern. But if there is such a statute of limitations, the United States hasn't raised it. That's correct, Your Honor. Okay. That's correct. If there are no further questions, the government submits on the brief. Thank you. We have some time remaining. Thank you, Your Honor. As counsel for the government pointed out, tried to point out certain points of the record that my client was out of the country during a certain amount of times and tried to make an ex post facto determination on what my client's status would be. Unfortunately, she is not the judge in this respect. And that's what we're asking for. If these issues exist and we can't negate that they might exist, this simply belies the fact of what we're saying, that she should have got some type of hearing on these issues. Now, in regards to the counsel's arguments for the way that the questions are set up, they may not have the intent to intimidate, but they certainly can have that effect. I don't think it's unreasonable to state that she could have been sitting in this room and she's told that she's going to get civil penalties just by herself, that she couldn't be intimidated. Now, in terms of counsel's arguments stating that nothing else could be done if they went to foreign immigration court, I would submit that that is not true. We know for a fact certain things, as I stated in the beginning. We know that she did have temporary residence at one time. We know that she submitted an application for a permanent residence. We know that that application was not denied. Clearly, the immigration judge can hold this case in abeyance if it were put on remand, can hold it in abeyance and send it over to the government for adjudication of the application. If they determine that she's not allowed a permanent residence, that's the way it goes and we accept the decision. And based on that respect, Your Honor, we would submit that there is something that can be done if it is remanded to the immigration court. How come you didn't bring up this for five years minimum or seven years? Your Honor, I can't comment on the issue simply by the fact that my client came to us after the second time that she got caught by the border. That was five years ago. Yes, Your Honor. I cannot, in terms of this, I'm sure you could. You don't know. And on that issue, we would submit, Your Honor. Thank you. We appreciate the arguments of counsel. Rodriguez v. Chertoff is submitted. And with that, we have concluded the cases for oral argument and the court stands adjourned. All rise. The United States Court of Appeals for the Ninth Circuit. The session is now closed. This court was just said to stand adjourned. I'm not part of it. It doesn't mean you're not part of it. All right. Well, I'll do this, Your Honor. Yes, you did. Good night. Good evening. Good evening. Good evening. Thank you.
judges: T.G. Nelson, Bybee, Duffy